Ruppin, C. J.
 

 The court is -of opinion, that evidence of the temper and deportment oi the deceased towards hi-s overseers and tenants was properly rejected, for several reasons. In the first place it was irrelevant, as it did not profess to slate, that the deceased was in the habit of assaulting the persons in his employment, but, at most, of being overbearing to them, and provoking them by arrogant and abusive language. If all that be .admit ted, it does not raise an argument of an assault by the deceased on .the prisoner, but of ill words only: which would not palliate-the homicide. And, indeed, in a case in which there is no direct evidence of a mutual combat, or any appearance at the place of a scuffle, or any wound on the prisoner, or even the slightest mark o.f violence, it would be impossible that the jury could rationally infer an attack of any sort by the deceased, or even an effort at defence. Resides, this is not one of those points, on which character is evidence. Temper and deportment, are not matters to be proved by reputation.; but if they are evidence at all, they can be established as facts only by those who know them. A second objection taken is, that the court would not allow the account given by the prisoner .of the manner in which the homicide took place, to be proved as evidence for him. We concur in that opinion. As evidence, what a party sa.ys, is received against him, but not for him. It does not prove the truth to be as related; and the truth is the subject of enquiry by the jury. Jt does not matter that the account is not a recent one, but was given early after the transaction. Unless the declarations form a part of the transaction, they are not receivable in .evidence. When it was usual for the accused to conduct their own defence, such indulgence was shewn in allowing them to state their cases in their own way. But these were statements then made by the accused to the jury, face to face, and were received merely as statements combined with argument. So, at pre-
 
 *436
 
 Counsel, though they ought properly to confine their opening to the case they expect the evidence to establish ; do frequently take a greater latitude of statement, as being the truth of the case, as they are instructed by their clients; and, in permitting that, the courts have been also liberal. But it is unkown, that a party’s previous declarations have been proved by witnesses for him. as evidence to the jury of the true nature of the transaction in issue.
 

 We think the exception taken to the terms, in which his Honor left the testimony of Goff ahd Vaughan to the consideration of the jury, untenable, for the reason given by the Judge for overruling it. But, in reality, directions “ to consider with care” the testimony of two witnesses, bearing upon a particular point of enquiry, in order to ascertain the truth on that point, with the further direction to consider in like manner the testimony of other witnesses that might bear upon the same part of the transaction, must be understood by the jury, as enjoining the duty of fairly comparing and weighing the testimony of each, and deciding against that part of the testimony, which could not be reconciled with other parts, in which the jury had more confidence.
 

 The remaining exception is principally of importance, and relates to the manner in which the law was laid down, as to the degree of the homicide. But we think, that when understood as it properly ought, and, indeed, must have been understood by the jury, the proposition stated was correct. The language of the Judge is to be read with reference to the evidence and the points disputed on the trial, and, of course, is to be construed with the context. Here the prisoner contended that the homicide was, at the most, manslaughter, because.it occurred on a sudden quarrel in a mutual combat on equal terms': and further, that it was excusable homicide, because the deceased made an attack on the prisoner with an axe, which was likely to kill or do him great bodily harm. It had been before admitted, that the prisoner slew the deceased ; and the legal inference was, that it was murder, unless mitigated by circumstances proved, and so the jury was informed : and there, as it seems to
 
 *437
 
 us, the court might have stopped, adding only that there was no evidence of any fact, which could reduce the offence below murder. For there is not a scintilla of what can be called proof, that there was a mutual combat, much less that the deceased made a deadly assault on the prisoner. We say, his Honor might have stopped as above, because the court is not bound to respond to a prayer to lay down abstract propositions to the jury, whieh do not arise on the evidence, nor to leave to them propositions of fact, to be guessed at, without proof. There was nothing to raise the.hypothesis, that the evidence was not all -on one side; and, therefore, the admitted killing was no' less than murder.
 

 But the court in mercy proceeded to discuss the case more minutely. And, after laying down the general rule, that it lay on the prisoner to shew the mitigation, the court explained to the jury the nature of the three species of homicide, namely, murder, manslaughter, and that which is excusable. That explanation is not set forth; but no fault was found with it, and therefore we assume that those subjects were correctly defined ; as, for example, that murder was a felonious killing with malice aforethought, and, that malice, for this purpose, would be constituted by a deliberate purpose to kill or do great bodily harm with a weapon likely to kill. Having thus explained these questions to the jury, which they were to decide, the-judge informed them, that the homicide could not be excusable, unless there was an assault on the prisoner, endangering his life or threatening him with great bodily harm, and he did what he could to avoid the necessity of killing. Supposing that the jury could see nothing to constitute this a case of excusable homicide, the court then proceeded to inform the jury, how they might ascertain whether it was murder or manslaughter.— And upon the supposition of a mutual combat, excluding malice, that is to say, a previous purpose of the prisoner to kill or do great bodily harm, and supposing the affray to be sudden, the court informed the jury that the killing would be manslaughter or murder, as they might find that the prisoner (who used a deadly weapon.) had or had not taken un
 
 *438
 
 due advantage in the fight, so that it was not on equal terms, To nothing that was said thus far, which seems, as was before remarked, to have been sufficient to dispose of the whole case, was any exception taken. But the court proceeding to discuss .the question of malice, as -if it were necessary to the eonviction for murder to prove affirmatively the actual existence of it in the heart of the prisoner, stated two cases for the consideration of-the jury-: the first, supposing the prisoner to fiave left his house, immediately before the killing, with the settled purpose to seek and kill the deceased, or to provoke him to a fight, that he might have a pretext to kill him — in that case it was murder: and the second, “that if the prisoner had malice against the deceased in the morning of the day, when the killing occurred, as there was no evidence that such malice was abandoned, even if the prisoner went out with his gun to shoot a deer, and then accidentally fell in with the deceased and killed him, the killing would not be manslaughter, as the malice would exclude the notion of provocation, if any there was ; and the enquiry would be between murder and excusable homicide.” To the former proposition no objection was taken by the prisoner; but to the latter he has excepted.
 

 In disposing of the exception, perhaps it might be sufficient to say, that there was no ground.for supposing a provocation, and that the chief objection to the instruction is, that it unnecessarily went out of the evidence to suppose a ease, in which peradventure the jury might find an excuse. There certainly appears no provocation, and without it the killing cannot be manslaughter. But supposing there was evidence of it, yet the case of the
 
 State
 
 v Johnson, 1 Ired. 354, sustains the instruction, as it must have been intended. The only objection to it, perhaps, is in the want of precision, as to the sense in which the term, “malice” is there used.— ■We admit, that his Honor did not express himself with his usual clearness. But in connection with all that passed, the meaning of it must have been correctly apprehended. The 11 malice,” required in the case supposed, must have been known to be, that temper and disposition of the prisoner’s
 
 *439
 
 heart towards tho deceased, which had been before spoken of and explained to the jury, as distinguishing the crimes of murder and manslaughter, namely,
 
 the purpose to kill or to do great bodily harm, to
 
 another.. Now, thus received, the instruction is not only within the principle, but the language in
 
 Johnson's
 
 case; with which case the courtis entirely satisfied. For although a person may not go'in search of or lie in wait for another, whom he kills; yet if he has formed the purpose to kill him, and, as here, within one or two hours alter forming and avowing that purpose, he, duly armed, meets the other by chance, whether in public or in se--cret, and slays him immediately, there is a presumption that he did it on the previous purpose and grudge, if there be no evidence of a change of purpose. When the thing designed follows so immediately the design formed, and in the manner purposed, it would be strange not to regard it as the execution of the design.
 

 The court is, therefore, of opinion, that there is no error in the record; and this must be certified to the Superior Court, that the sentence may be executed.
 

 Per Curiam. Ordered accordingly.