STATE v. FED EUGENE WHEELER.

(Filed 15 April, 1964.)

**Criminal Law § 97—**

The act of the court in permitting the solicitor to insistently question defendant as to a collateral matter denied by defendant and in repeating questions relating to incompetent matter after the court had sustained a prior objection to the question, *held* to require a new trial.

CERTIORARI to review defendant's trial and conviction before *Froneberger, J.,* December, 1963 Criminal Session, GASTON Superior Court.

The defendant was arraigned on six bills of indictment, in each of which he and James Ray Bynum were charged with the larceny of cased orlon yarn valued at more than $200.00, the property of Pharr Yarn Mills. The defendant entered a plea of not guilty. The charges were consolidated for trial. The jury returned a verdict of guilty on all charges. The court imposed active prison sentences of six years.

What, if anything, happened to the charges against the defendant James Ray Bynum, is left to conjecture. He appeared and testified as a witness for the State. He admitted his active participation in the theft and in the disposition of the stolen yarn. He testified that the defendant was involved with him in the perpetration of the offenses and shared in the $3,900.00 received from the sales which he made.

The defendant testified as a witness in his own defense, denying that he had anything to do with, or any knowledge of, the offenses charged. From the verdict and judgment, the defendant appealed.

*T. W. Bruton, Attorney General, Harry W. McGalliard, Deputy Attorney General for the State.*

*Mullen, Holland & Cooke by Frank P. Cooke for defendant appellant.*

PER CURIAM. Since the Court has decided the cause must go back for new trial, we refrain from discussing the evidence further than to

say the guilt of the defendant rested entirely on the uncorroborated evidence of the codefendant who testified as a witness for the State. The trial from the beginning developed into a controversy between the Solicitor and the Attorney for the defendant. Lack of firmness on the part of the presiding judge permitted the trial to get out of hand.

Obviously, the outcome of the contest depended on which the jury believed — the accomplice who testified for the State or the defendant who testified for himself. The accomplice being without support for his story, the State's hope for conviction depended on discrediting the defendant's testimony. The Solicitor, for the purpose of impeaching the defendant, made repeated and insistent inquiries about domestic difficulties. These the defendant denied. Nevertheless, the Solicitor continued to return to the subject. Perhaps more damaging than the questions with respect to the domestic difficulties were the Solicitor's questions of the State's witness concerning a conversation which the witness had with the defendant. The defendant denied any knowledge of the offenses charged. The witness advised him to go to the officers and request a lie detector test. The Solicitor asked what was the defendant's reply. The court sustained the objection. However, the Solicitor kept discussing the admissibility of the evidence and thereafter three different times repeated the inquiry; and, though each time the court sustained the objection, the persistence of the State's prosecuting officer may have induced the jury to believe the defendant was covering up. The bickering which the court permitted to go on at least created an atmosphere not conducive to a fair and impartial trial. The defendant is the one who came out with the smell of smoke on his clothes. We conclude there should be a

New trial.