STATE OF NORTH CAROLINA v. TIMOTHY ALEXANDER ALKANO

No. 9426SC576

(Filed 20 June 1995)

### 1. Constitutional Law § 359 (NCI4th); Evidence and Witnesses § 1087 (NCI4th)— defendant's failure to offer explanation of events—no violation of right against self-incrimination

In a prosecution of defendant for second-degree sexual offense, the prosecutor's questions to the arresting officers concerning defendant's pre-*Miranda* post-arrest lack of explanation of the events in question did not violate defendant's right against self-incrimination, since defendant did not choose to remain silent but instead, without any interrogation whatever by the officers, spontaneously made several inculpatory statements after being arrested, and the prosecutor's line of questioning served only to show the extent of defendant's spontaneous utterances.

**Am Jur 2d, Criminal Law § 938.**

### 2. Evidence and Witnesses § 764 (NCI4th)— drug use by defendant—improper questions stricken—defendant not prejudiced

Defendant in a sex offense case was not prejudiced by the prosecutor's questions about use of drugs since defendant's objections were sustained, the court gave curative instructions to the jury, and no evidence of drug use was admitted or presented.

**Am Jur 2d, Appellate Review §§ 705-708, 710.**

### 3. Evidence and Witnesses § 2949 (NCI4th)— alcohol use— impeachment by showing impairment of witness—cross-examination proper

In a prosecution of defendant for second-degree sexual offense, cross-examination of defendant concerning whether he had consumed alcohol on the day of the incident was not improper character evidence, since a witness may be impeached under N.C.G.S. § 8C-1, Rule 611(b) by evidence showing mental or physical impairment affecting his ability to observe and remember the events in question, and impeachment of a witness con-

STATE v. ALKANO

[119 N.C. App. 256 (1995)]

cerning alcohol use near the time of the observed incident is permissible to show such impairment.

**Am Jur 2d, Witnesses §§ 872, 873.**

**Impeachment of witness with respect to intoxication. 8 ALR3d 749.**

Judge GREENE concurring in the result.

Appeal by defendant from judgment and commitment entered 24 January 1994 by Judge Loto G. Caviness in Mecklenburg County Superior Court. Heard in the Court of Appeals 1 March 1995.

*Attorney General Michael F. Easley, by Assistant Attorney General Elisha H. Bunting, Jr. and Assistant Attorney General D. Sigsbee Miller, for the State.*

*John G. Plumides and T. Russell Peterman, Jr. for defendant-appellant.*

LEWIS, Judge.

Defendant was convicted 24 January 1994 of second degree sexual offense and was sentenced to twenty-five years in the North Carolina Department of Correction.

The evidence for the State tended to show: The prosecutrix and friends went to the Pterodactyl Club in Charlotte on 23 May 1993. During their evening there, a man touched her, and, through the thin pants she was wearing, his fingers penetrated her vagina. Defendant was identified as the man who had grabbed her. She, her friends, and a bouncer found defendant and took him to the lobby. One of the friends slugged defendant.

Police officers Franklin and Helms arrived and arrested defendant. Neither officer gave defendant Miranda warnings. Defendant asked what he had done, and Officer Franklin told him what the prosecutrix had said. Defendant then said, "[D]id she scream?—did she say she screamed? She didn't scream." Neither Officer responded. On the way to jail, defendant continued to talk, but neither officer responded.

The prosecutor elicited the following testimony from Officer Franklin:

**STATE v. ALKANO**

[119 N.C. App. 256 (1995)]

Q.    Okay. Now, during that time period [while he was in Officer Franklin's presence], what if anything did the Defendant tell you with regard to his asking [the prosecutrix] to dance?

A.    He never made that statement at any time . . . .

Q.    What explanation if any did the Defendant state while he was in your presence?

MR. PLUMIDES: Objection.

Q.    About what had happened?

THE COURT: I am going to overrule it and permit him to respond if he can.

A.    He gave no explanation.

On re-direct:

Q.    Officer, . . . the defense attorney asked you or stated you just talked to the prosecuting witness, you didn't take a statement from Mr. Alkano. And you answered you did not.

A.    No, sir, I did not take a statement from Mr. Alkano regarding the crime which [sic] he was charged.

Q.    . . . Did he ever offer to give you a statement?

MR. PLUMIDES: Objection.

THE COURT: I'm going to overrule it and let him respond.

A.    No, sir, he did not.

On direct Officer Helms testified:

A.    . . . And when the suspect found out that the man that assaulted him was not going to jail, he stated, so the man that hit me is not going to jail, but I am by sticking my finger into her vagina.

Q.    Okay. Did you make any response—

A.    No, sir, I did not

Q.    —to those statements?

A.    No, sir.

Q.    At any time during the period when this defendant was in your presence, did he ever offer to give you a statement about what had happened?

A. No, sir.

MR. PLUMIDES: Objection.

THE COURT: Overruled. Permit him to respond if he knows.

Q. Your answer?

A. No, sir.

Defendant's evidence tended to show: Defendant asked the prosecutrix to dance when he was at the Pterodactyl Club that evening, but she declined. The prosecutrix's boyfriend, who was walking with her, told defendant she was nervous because someone had grabbed her. When the prosecutrix identified defendant as the man who had grabbed her, defendant denied the accusation.

Defendant testified at trial. During cross-examination, the prosecutor questioned defendant concerning the use of alcohol and drugs. The Court sustained objections to questions about drugs but allowed questions concerning use of alcohol. The prosecutor again questioned defendant about use of drugs and again the court sustained the objection and instructed the jury to disregard the question. The prosecutor then asked defendant if he ingested anything that altered his mental faculties. Defendant did not object to this question.

Defendant raises the following issues on appeal: Did the trial court commit reversible error (1) by allowing testimony of the arresting officers that defendant, when placed in custody, failed to give a statement or explanation about the crime for which he had been arrested and (2) by allowing the prosecutor to cross-examine defendant regarding use of alcohol and drugs.

I. Testimony Concerning Lack of Statement or Explanation

[1] In his first assignment of error, defendant challenges the officers' testimony on the lack of statement or explanation from defendant on several grounds. However, in his brief, defendant presents argument only on the ground that admission of this testimony violated defendant's right against self-incrimination under the Fifth and Fourteenth Amendments of the United States Constitution and under Article I, Section 23 of the North Carolina Constitution. His other arguments and assignments of error are deemed abandoned. N.C.R. App. P. 28(a) (1995).

The Fifth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment, *Malloy v.*

*Hogan,* 378 U.S. 1, 12 L. Ed. 2d 653 (1964), provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Similarly, our North Carolina Constitution provides: "In all criminal prosecutions, every person charged with a crime has the right to . . . not be compelled to give self-incriminating evidence . . . ." N.C. Const. art. I, § 23. The admission of freely volunteered statements is barred neither by the Fifth Amendment of the United States Constitution, *Miranda v. Arizona,* 384 U.S. 436, 478, 16 L. Ed. 2d 694, 726 (1966), nor by the North Carolina Constitution. *State v. Levan,* 326 N.C. 155, 172, 388 S.E.2d 429, 438 (1990).

Defendant does not contend that the officers conducted in-custody interrogation as would require *Miranda* warnings. Rather, defendant contends that the in-court testimony of the officers concerning defendant's pre-Miranda, post-arrest lack of explanation or statement violated his constitutional right to remain silent. The problem with defendant's argument, here, is that defendant did not choose to remain silent. Without any interrogation whatever by the officers, defendant spontaneously made several inculpatory statements after being arrested.

The questions and the officers' responses concerning defendant's lack of explanation immediately followed their testimony concerning the unsolicited statements defendant did make during the fifteen minutes that it took to arrest defendant and transport him to the station. This line of questioning in-court by the prosecutor served only to show the extent of defendant's spontaneous utterances. We do not see how in-court questioning of the officers on the extent of defendant's statements violated either his federal or state constitutional right against compelled self-incrimination.

Neither party has presented any cases directly on point, nor have we found any. Defendant cites *State v. Castor,* 285 N.C. 286, 204 S.E.2d 848 (1974), in which our Supreme Court held it reversible error to admit an investigator's testimony concerning a defendant's pre-Miranda, in-custody silence in the face of accusatory statements of a co-defendant. *Id.* at 293, 204 S.E.2d at 853. *Castor* is distinguishable, however, because the defendant in *Castor* did exercise his right to remain silent, in contrast to defendant Alkano who spoke freely while in custody. In fact, our Supreme Court emphasized this fact in reaching its holding:

Defendant was in custody, charged with . . . [murder] . . . when Elaine [co-defendant] was brought into his presence and ques-

tioned concerning what she had previously related . . . . Defendant was not then represented by counsel and had not been advised of his constitutional rights. However, decision is not based on either of these circumstances. *The crucial fact is that he exercised his constitutional right to remain silent.*

*Castor*, 285 N.C. at 291, 204 S.E.2d at 852. *State v. Williams*, 288 N.C. 680, 220 S.E.2d 558 (1975), is similarly distinguishable in that defendant *Williams* did remain silent as to the events for which he was charged. *See Williams*, 288 N.C. at 692-93, 220 S.E.2d at 567-68.

A defendant's lack of silence was similarly critical in *United States v. Agee*, 597 F.2d 350 (3rd Cir.), *cert. denied*, 442 U.S. 944, 61 L. Ed. 2d 315 (1979), in which the United States Court of Appeals for the Third Circuit affirmed the conviction of a defendant who was cross-examined by the prosecution and by a co-defendant's attorney about statements he did not make at the time of his arrest. *See Agee*, 597 F.2d at 353. The *Agee* court, distinguishing *Doyle v. Ohio*, 426 U.S. 610, 49 L. Ed. 2d 91 (1976), stated:

> *"Silence" at the time of arrest is the critical element of the Fifth Amendment right on which Agee relies* . . . . The Supreme Court has described that right as "the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.' " The rationale which the Supreme Court adopted for its decision in *Doyle* was that it is fundamentally unfair for the prosecution to impose a penalty at trial on a defendant who has exercised that right by choosing to remain silent. . . . *Doyle* can have no application to a case in which the defendant did *not* exercise his right to remain silent . . . . *Agee did not exercise his right to remain silent regarding the facts of the incident.*

*Agee*, 597 F.2d at 354-56 (citations omitted) (emphasis added). *Doyle* is similarly distinguishable here. The defendant in *Doyle* asked one question, "[W]hat's this all about?" at his arrest, but remained silent as to the facts of the incident. *Doyle*, 426 U.S. at 614 n.5, 49 L. Ed. 2d at 96 n.5. Defendant Alkano, like defendant Agee, was not silent regarding the facts of the incident at the time of his arrest.

Defendant also argues that the prosecution's use of the officers' testimony during its case-in-chief differs from the impeachment use of a defendant's silence because it puts the defendant in the position of having to take the stand to clear up the ambiguity raised by the officers' testimony. Under these facts, we find this argument without

merit. We cannot see how the officers' testimony about defendant's failure to give further explanatory statements made it any more necessary for him to testify than was already necessary to refute the officers' testimony on his inculpatory statements. The fact remains that defendant did not remain silent. Rather, he made several inculpatory statements which he then chose to explain by testifying at trial.

The prosecutor's questions to the officers concerning defendant's lack of explanation did not violate defendant's rights against self-incrimination under either the United States or North Carolina Constitutions.

II. Cross-examination Regarding Use of Alcohol and Drugs

a. Questions About Use of Drugs

**[2]** During the trial, the prosecutor asked defendant questions about use of drugs. Defendant's objections were sustained, thus eliminating any prejudice caused by the questions. *See State v. Barrow*, 276 N.C. 381, 387-88, 172 S.E.2d 512, 516 (1970) (no prejudice when objection sustained; merely asking the question is not prejudicial). When the prosecutor again asked a question concerning defendant's use of drugs, defendant's objections were sustained and the court gave curative instructions to the jury, thus further correcting any prejudice caused by the questions. *See State v. Perry*, 276 N.C. 339, 345, 172 S.E.2d 541, 545-46 (1970) (harmful effect of an officer's testimony concerning a second warrant corrected by instruction not to consider the testimony).

*State v. Wheeler*, 261 N.C. 651, 135 S.E.2d 669 (1964), is distinguishable. In *Wheeler*, after an objection to the question was sustained, the prosecutor questioned the defendant three times concerning his response to a suggestion to take a lie detector test. This problem was compounded in *Wheeler* by the prosecutor's continued questioning concerning the defendant's domestic problems. There is no indication in *Wheeler* that the improper questions were stricken or that the jury was instructed to disregard the questions. Our Supreme Court noted in *Wheeler* that the judge generally failed to be firm with the attorneys and allowed the trial "to get out of hand." *Id.* at 652, 135 S.E.2d at 670.

Defendant Alkano's trial did not "get out of hand." Objections were sustained, curative instructions were given, and no evidence of drug use was admitted or presented. Defendant was not prejudiced by

**STATE v. ALKANO**

[119 N.C. App. 256 (1995)]

the questioning about use of drugs. The trial judge retained control of the proceedings throughout.

Defendant also argues that the court erred in allowing the prosecutor to question him about substances ingested that would alter his mental faculties. Since defendant did not object to this question at trial, has not argued plain error or asserted how this issue is otherwise preserved for appellate review, we decline to address it further. N.C.R. App. P. 10; *State v. Oliver*, 309 N.C. 326, 335, 307 S.E.2d 304, 312 (1983).

### b. Questions About Use of Alcohol

[3] Defendant claims that cross-examination concerning whether he had consumed alcohol on the day of the incident was improper character evidence under N.C.G.S. § 8C-1, Rule 608(b) and Rule 404(b) or otherwise should have been excluded under N.C.G.S. § 8C-1, Rule 403.

"[E]vidence of drug use alone is not admissible under Rule 608(b)." *State v. Williams*, 330 N.C. 711, 718, 412 S.E.2d 359, 364 (1992). However, a witness may be impeached under N.C.G.S. § 8C-1, Rule 611(b), by evidence showing mental or physical impairment affecting his ability to observe and remember the events in question. *Williams*, 330 N.C. at 719, 412 S.E.2d at 364; 1 Brandis & Broun, *Brandis and Broun on North Carolina Evidence* § 156, at 511 (4th ed. 1993). Impeachment of a witness concerning alcohol use near the time of the observed incident is permissible to show such impairment. *State v. Rollins*, 113 N.C. 722, 732, 18 S.E. 394, 398 (1893); Brandis & Broun, *supra*, at 512. Here, the prosecutor limited its questions on alcohol use to substances used on the day and evening of the incident and did not ask questions about addiction or habitual use. This was permissible impeachment. *See Williams*, 330 N.C. at 719, 412 S.E.2d at 364.

Defendant also contends that the State did not have a good faith basis for its questions concerning alcohol use. Questions asked on cross-examination must be asked in good faith. *State v. Williams*, 279 N.C. 663, 675, 185 S.E.2d 174, 181 (1971). Defendant testified that he had visited other bars that evening, and Officer Helms testified that defendant had an odor of alcohol about his person. Thus, the State had a good faith basis for its attempts to impeach defendant's testimony by seeking to establish whether alcohol use affected his ability to observe and remember the events of that evening.

Defendant also contends that these questions on alcohol use were so prejudicial as to be improper under Rule 403. Rule 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

N.C.G.S. § 8C-1, Rule 403 (1988). Whether to exclude evidence under Rule 403 "is a matter within the sound discretion of the trial judge." *State v. Schultz*, 88 N.C. App. 197, 203, 362 S.E.2d 853, 857 (1987), *aff'd*, 322 N.C. 467, 368 S.E.2d 386 (1988). A new trial will be ordered for abuse of discretion in not excluding evidence under Rule 403 "only upon a showing that the 'ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision.' " *State v. Cotton*, 329 N.C. 764, 768, 407 S.E.2d 514, 518 (1991) (quoting *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986)).

Given the discrepancy in testimony as to what actually happened, the jury was faced with the task of judging the ability of each witness to recall the events of that evening with precision. The incident in question took place in a club in which alcohol was served. The prosecutrix and another witness present that evening, as well as defendant, were questioned on cross-examination as to whether they were drinking that night. Defendant was not singled out by this questioning; he was subjected to the same type of limited questioning on alcohol use as were the other witnesses. We conclude that the probative value of this evidence showing defendant's ability to recall and relate was not substantially outweighed by any unfair prejudice, and the trial judge's decision to allow the questioning was not manifestly unsupported by reason.

The court did not err in permitting the prosecutor to question defendant on alcohol use in this manner.

For the reasons stated, we hold there was no error.

No error.

Judge COZORT concurs.

Judge GREENE concurs in the result.

Judge GREENE concurring in the result:

Contrary to the majority, I believe that the prosecutor's questions to the officers concerning defendant's lack of explanation did violate the defendant's rights against self-incrimination.

Our Supreme Court has been unequivocal in holding that a defendant's in-custody silence cannot be offered into evidence either for the purpose of proving his guilt or for the purpose of impeachment. *State v. Castor*, 285 N.C. 286, 292, 204 S.E.2d 848, 853 (1974); *State v. Williams*, 288 N.C. 680, 692-93, 220 S.E.2d 558, 568 (1975). The United States Supreme Court is in accord. *United States v. Hale*, 422 U.S. 171, 176, 45 L. Ed. 2d 99, 104-05 (1975); *Doyle v. Ohio*, 426 U.S. 610, 49 L. Ed. 2d 91 (1976).

In this case there can be no dispute that the defendant chose to remain silent on several occasions while he was in the presence of the police officers. There can also be no dispute that when the State presented evidence that defendant never gave an explanation, never made any response and never offered to give a statement, it offered evidence on defendant's silence. It therefore follows that the admission of this evidence was error.

I disagree with the majority that the defendant lost his right to remain silent once he spoke with the officers about the incident. There is no language in any of the cases relied on by the majority, or any that I have found, suggesting that once a defendant has some communication with the police "regarding the facts of the incident" that he is no longer entitled to exercise his right to remain silent. Indeed in the context of in-custody interrogation the courts have been unambiguous in holding that a defendant has the right to "cut off questioning" and stand silent, *Miranda v. Arizona*, 384 U.S. 436, 474, 16 L. Ed. 2d 694, 723 (1966), and there is no reason to provide otherwise where the silence is asserted in a non-interrogation in-custody situation. Furthermore, I do not believe that *United States v. Agee*, 597 F.2d 350 (3d Cir. 1979), *cert. denied, Agee v. United States*, 422 U.S. 944, 61 L. Ed. 2d 315 (1979), relied on by the majority, suggests a different result. The *Agee* Court simply held that the holding of *Doyle* had not been violated because the question asked by the prosecutor "was not a reference to Agee's purported silence." *Agee*, 597 F.2d at 354. The Court did not hold that the prosecutor examined the defendant about "statements he did not make."

Although the evidence relating to the defendant's silence should not have been admitted, the error does not require a new trial because the other evidence in this record demonstrates beyond a reasonable doubt that the error was harmless. N.C.G.S. § 15A-1443(b) (1988) (burden on the State where error is constitutional in nature). The prosecutrix was unequivocal in her testimony that the defendant assaulted her and the statements the defendant did make to the officers were particularly incriminating.

Because I join with the majority in its resolution of the other issues raised by the defendant, I concur with the ultimate disposition of "No error."