STATE OF NORTH CAROLINA v. MANUEL MENDOZA, DEFENDANT

No. COA09-327

(Filed 17 August 2010)

## Constitutional Law— Fifth Amendment—defendant's silence —improperly admitted—no plain error

The trial court erred in allowing the State to introduce evidence during its case in chief of defendant's pre-arrest silence and his post-arrest, pre-*Miranda* silence. As the only permissible purpose for such evidence was impeachment and defendant had not yet testified, the testimony was improperly admitted as substantive evidence of defendant's guilt. Moreover, the State's use of defendant's post-arrest, post-*Miranda* warnings silence was flatly forbidden. However, the error in admitting this testimony did not rise to the level of plain error given the substantial evidence pointing to defendant's guilt.

Appeal by defendant from judgment entered 10 September 2008 by Judge James Floyd Ammons, Jr. in Wayne County Superior Court. Heard in the Court of·Appeals 16 November 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Angel E. Gray, for the State.*

*Leslie C. Rawls for defendant-appellant.*

GEER, Judge.

Defendant Manuel Mendoza appeals from the judgment convicting him of trafficking in cocaine by possession and trafficking in cocaine by transportation. Defendant contends that the trial court erred, at various points throughout the trial, in permitting the State to introduce evidence about defendant's silence both before and after he was arrested. Because defendant did not object to any of this testimony at trial, the plain error doctrine applies.

We agree with defendant's argument that the trial court erred in allowing the State to introduce evidence during its case in chief of defendant's pre-arrest silence and his post-arrest, pre-*Miranda* warnings silence. The only permissible purpose for such evidence is impeachment. Since defendant had not yet testified at the time the State presented the evidence, we conclude that this testimony could not have been used for impeachment, but instead was improperly admitted as substantive evidence of defendant's guilt. Likewise, the State's use of defendant's post-arrest, post-*Miranda* warnings silence was flatly forbidden under *Doyle v. Ohio*, 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976). Based on our review of the record, however, we have concluded that the error in admitting this testimony did not rise to the level of plain error given the substantial evidence pointing to defendant's guilt.

Facts

On 14 November 2007, at approximately 2:20 p.m., State Highway Patrol Trooper James F. Davis was dispatched to a one-car accident in Wayne County near the entrance of a subdivision. By the time he arrived, emergency medical technicians were already preparing to transport a passenger, Christie Dubois, from the scene. Trooper Davis did an initial visual assessment of the scene and noticed that the vehicle had some minor damage. He then spoke with defendant, who was waiting nearby and was the driver and owner of the car. Defendant explained that he had run off the road and hit a ditch. He had then pulled the car up to the entrance of the subdivision to get it out of the way. Trooper Davis issued defendant a citation for driving left of center.

STATE v. MENDOZA

[206 N.C. App. 391 (2010)]

Trooper Davis called for a tow truck and began filling out an accident report while he and defendant waited for the truck to arrive. During this time frame, Trooper Davis and defendant did not discuss much aside from questions related to completing the accident report, although, at some point, defendant mentioned that he and Dubois had been "moving some personal belongings" when the accident occurred.

When the tow truck arrived and Trooper Davis told defendant that his vehicle would be towed, defendant "seemed to get a little nervous, . . . kind of fidgety" and said that he "wanted to get some items out of it." Defendant went to the driver's side of the car and removed a plastic grocery bag. Trooper Davis noticed that defendant was trying to conceal the bag from him, putting it behind his back. Concerned for his safety, Trooper Davis approached and took the bag from defendant. Aside from some of defendant's clothes, the bag contained what Trooper Davis estimated to be at least a couple thousand dollars, all in bills. The actual amount was later determined to be $2,950.00: $600.00 in 100 dollar bills, $1,760.00 in 20 dollar bills, $490.00 in 10 dollar bills, and $100.00 in five dollar bills.

Immediately after Trooper Davis took the bag of clothes and money, he saw what he believed to be cocaine in two clear plastic bags "lying on the seat" in the back of the car. Trooper Davis informed defendant that he was under arrest for possession of drugs, handcuffed him, and sat him down beside the car. Trooper Davis then began to do a "general search of what [he] could see right at that point." On the floorboard behind the driver's seat, he found a blue cooler with more cocaine inside. After that, Trooper Davis called for more troopers to assist him.

Trooper Jock Smith and Trooper Williams arrived at approximately 3:00 p.m. The three troopers conducted a search of defenant's vehicle and found a total of 11 bags of cocaine, two digital scales, two crack pipes, and a box of .380 ammunition in the back seat of the vehicle.

Trooper Davis turned defendant over to Trooper Smith for processing. Trooper Smith advised defendant of his *Miranda* rights, searched him for weapons, and sat him in his patrol car. When Trooper Smith asked defendant where he got the cocaine, defendant replied that "he was in big trouble and he needed a lawyer before any questioning." Trooper Smith did not ask defendant any further questions.

Trooper Smith transported defendant to the Highway Patrol Station where he completed the chain of custody form and logged in the evidence, which included the money, cocaine, cooler, scales, pipes, and ammunition. Defendant was then taken to the Wayne County Detention Center. The money was eventually seized by the United States Marshals. The cocaine taken from defendant's vehicle was tested at the SBI crime lab and confirmed to be 339.3 grams of powder cocaine.

On 2 June 2008, defendant was indicted on one count of trafficking in cocaine by possession and one count of trafficking in cocaine by transportation. At trial, he testified on his own behalf. He explained that at the time of the accident, he was self-employed, doing sheet rock work and building garages and sheds. He was generally paid in cash for his jobs, and he also usually paid cash to the people who worked for him. Defendant said he informed Trooper Davis that the money in the grocery bag was "from working."

Defendant also explained that at the time of the accident, he was giving Dubois a ride because she had recently broken up with her boyfriend and had been evicted from the trailer where she lived. Defendant and Dubois had loaded some of her belongings into his vehicle and were on their way to pick up her daughter from school. According to defendant, when Dubois saw Trooper Davis arrive at the scene, she told defendant to run. He denied that the cocaine or cooler belonged to him. When asked if the cocaine belonged to Dubois, defendant claimed he had never seen it and did not know whose it was. He also said he had never seen the cooler before that day, but he believed Dubois put it in the car. He denied knowing that the scales were in the car.

The jury returned guilty verdicts on both charges on 10 September 2008. The trial court sentenced defendant to a term of 70 to 84 months imprisonment. Defendant timely appealed to this Court.

## Discussion

Defendant argues on appeal that the trial court erred when it permitted the State to question certain witnesses about defendant's failure, prior to trial, to offer any explanation for the money and cocaine found in his car. Defendant contends that the admission of this testimony violated his rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, §§ 19 and 23 of the North Carolina Constitution. The challenged testimony includes evi-,

dence of defendant's pre-arrest silence presented during the State's case in chief; evidence of his post-arrest, pre-*Miranda* warnings silence presented during the State's case in chief; evidence of his pre-arrest silence presented during the State's rebuttal case; and evidence of his post-arrest, post-*Miranda* warnings silence presented during both the State's case in chief and cross-examination of defendant.

"Whether the State may use a defendant's silence at trial depends on the circumstances of the defendant's silence and the purpose for which the State intends to use such silence." *State v. Boston*, 191 N.C. App. 637, 648, 663 S.E.2d 886, 894, *appeal dismissed and disc. review denied*, 362 N.C. 683, 670 S.E.2d 566 (2008). In *Boston*, this Court explained that a defendant's pre-arrest silence and post-arrest, pre-*Miranda* warnings silence may not be used as substantive evidence of guilt, but may be used by the State to impeach the defendant by suggesting that the defendant's prior silence is inconsistent with his present statements at trial. *Id.* at 649 n.2, 663 S.E.2d at 894 n.2. A defendant's post-arrest, post-*Miranda* warnings silence, however, may not be used for any purpose. *Id.* at 648-49, 663 S.E.2d at 894. *See also Doyle*, 426 U.S. at 619, 49 L. Ed. 2d at 98, 96 S. Ct. at 2245 (holding that "use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment"). Because different law applies to the different circumstances surrounding the testimony challenged by defendant, we analyze each circumstance separately.

Defendant did not, however, object to the admission of any of this testimony at trial, and we, therefore, review the admission of the testimony only for plain error.[1] The plain error rule applies

> "only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of

---

[1]. Defendant, when describing factors that this Court should consider in determining whether any error in this case is prejudicial, cites to *Boston*. In *Boston*, however, the issue had been preserved for appeal, and this Court was required to determine whether the alleged error was harmless beyond a reasonable doubt. *Id.* at 652, 663 S.E.2d at 896. *Boston* did not address plain error.

judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513, 103 S. Ct. 381 (1982)). In addition, "the plain error rule may not be applied on a cumulative basis, but rather a defendant must show that each individual error rises to the level of plain error." *State v. Dean*, 196 N.C. App. 180, 194, 674 S.E.2d 453, 463, *appeal dismissed and disc. review denied*, 363 N.C. 376, 679 S.E.2d 139 (2009).

Testimony about Defendant's Pre-Arrest Silence
Elicited During State's Case in Chief

Defendant challenges several portions of the State's direct examination of Trooper Davis presented during its case in chief that related to defendant's pre-arrest silence. Defendant points to testimony by Trooper Davis regarding defendant's employment:

Q. For the information regarding the—during the wreck report, did you have to get any information from Mr. Mendoza about what type of work he did or anything along those lines?

A. No. There was nothing on the accident report that requires that. I didn't—I didn't question him about his employment or anything.

This testimony conveyed information about the accident report form and Trooper Davis' obligations with respect to completing the form. The testimony comments only on Trooper Davis' lack of questioning and not on defendant's pre-arrest silence and, therefore, was not erroneously admitted.

Defendant also points to the following testimony of Trooper Davis about defendant's silence:

Q. When you found the cocaine, the first amount of cocaine, on the back seat, and you told Mr. Mendoza that he was being placed under arrest for the possession of drugs, did he act surprised?

A. He didn't say anything, as I recall.

. . . .

Q. Did Mr. Mendoza ever—when you first seized the money from Mr. Mendoza, did he ever have an explanation for you as to why he was in possession of that large amount of money?

A. No, ma'am.

This commentary on defendant's pre-arrest silence falls squarely under *Boston* and *Jenkins v. Anderson*, 447 U.S. 231, 65 L. Ed. 2d 86, 100 S. Ct. 2124 (1980).

In *Boston*, this Court determined, in a case of first impression, that "a defendant's Fifth Amendment right against self-incrimination, unlike a defendant's Fifth Amendment right to counsel, does not attach solely upon custodial interrogation" and held, therefore, that "a proper invocation of the privilege against self-incrimination is protected from prosecutorial comment or substantive use, no matter whether such invocation occurs before or after a defendant's arrest." 191 N.C. App. at 651, 663 S.E.2d at 896. Although the Court concluded that a defendant's pre-arrest silence may not be used for substantive purposes, the Court noted that it remains "clear that the State may use a defendant's pre-arrest silence for impeachment purposes if the defendant chooses to testify at trial." *Id.* at 651 n.4, 663 S.E.2d at 896 n.4. *Accord Jenkins*, 447 U.S. at 240-41, 65 L. Ed. 2d at 96, 100 S. Ct. at 2130 (holding "use of prearrest silence to impeach a defendant's credibility does not violate the Constitution").

The State essentially argues that because defendant ultimately testified, *Boston* and *Jenkins* do not apply. The State, however, cites no authority for the proposition that the State may present impeachment evidence in advance of a defendant's actually testifying. As this Court has previously recognized, the "main purpose of impeachment is to discount the credibility of a witness for the purpose of inducing the jury to give less weight to his testimony." *Sterling v. Gil Soucy Trucking, Ltd.*, 146 N.C. App. 173, 178, 552 S.E.2d 674, 677 (2001). The State has failed to explain how Trooper Davis' testimony could have achieved the purpose of impeaching defendant's statements at trial without defendant's already having testified. *See also Jenkins*, 447 U.S. at 238, 65 L. Ed. 2d at 94, 100 S. Ct. at 2129 ("[I]mpeachment *follows* the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial." (emphasis added)); *Boston*, 191 N.C. App. at 649 n.3, 663 S.E.2d at 894 n.3 (noting State's purpose in eliciting testimony about defendant's prearrest silence "was clearly not to impeach" defendant's credibility or alibi where defendant did not testify at trial and presented no other evidence on her own behalf).

Alternatively, the State argues that, under *State v. Alkano*, 119 N.C. App. 256, 458 S.E.2d 258, *appeal dismissed*, 341 N.C. 653, 465 S.E.2d 533, 467 S.E.2d 898 (1995), the State's questions were permissible "to show the extent of [defendant's] unsolicited, spontaneous utterances." In *Alkano*, as this Court pointed out, the defendant "did not choose to remain silent. Without any interrogation whatever by the officers, defendant spontaneously made several inculpatory statements after being arrested." *Id.* at 260, 458 S.E.2d at 261. The Court held that the State was entitled to ask questions not only about what the defendant did say, but also about what he did not say during his spontaneous statements:

> The questions and the officers' responses concerning defendant's lack of explanation immediately followed their testimony concerning the unsolicited statements defendant *did* make during the fifteen minutes that it took to arrest defendant and transport him to the station. This line of questioning in-court by the prosecutor served only to show the extent of defendant's spontaneous utterances. We do not see how in-court questioning of the officers on the *extent* of defendant's statements violated either his federal or state constitutional right against compelled self-incrimination.

*Id.*

Here, defendant made a single post-arrest, post-*Miranda* warnings statement about being "in big trouble" and invoking his right to remain silent and his right to counsel in response to Trooper Smith's interrogation. The statements testified to by Trooper Davis occurred prior to the single utterance about being "in big trouble" and shed no light on the extent of that single utterance—stating the obvious—made a significant time later and in response to questioning by Trooper Smith. Instead, the State was simply doing what *Boston* forbids: pointing out to the jury that defendant chose to remain silent when in Trooper Davis' presence rather than provide the explanation proffered at trial. Consequently, *Alkano* is not applicable here.

In sum, Trooper Davis' testimony regarding defendant's silence was admitted as substantive evidence during the State's case in chief and not for the purpose of impeachment. Further, the testimony was not admitted to show the extent of any spontaneous statements. Therefore, under *Boston* and *Jenkins*, the admission of this testimony was error.

Since defendant did not object to the erroneous admission of this testimony, plain error applies. Our review of the record indicates that

abundant evidence pointed to defendant's guilt. A total of 339.3 grams of cocaine was found in defendant's car, which he was driving. This amount of cocaine was the most that Trooper Smith had seen in his 30 years with the Highway Patrol. The cocaine was in two plastic bags lying on the back seat, as well as in several plastic bags inside a cooler on the floorboard behind the driver's seat. Since Trooper Davis was able to easily spot the two bags lying on the back seat, a jury would likely conclude that defendant must have known the bags were there.

Along with the cocaine, the troopers discovered two crack pipes, two digital scales, and a box of .380 automatic ammunition. Trooper Davis explained to the jury that weighing drugs is the only reason people use the type of scales found in the car and that weighing the drugs matters because "[t]hat's how they get paid." Defendant was also in possession of $2,950.00 at the time of his arrest, approximately $800.00 of which was in his wallet and the remainder of which was in a plastic grocery bag that also contained some of defendant's clothing. Defendant tried to conceal the bag and money from Trooper Davis. Moreover, after learning that his car would be towed, defendant became "nervous" and "fidgety" and asked Trooper Davis if he could remove some items from the car.

Defendant had little explanation for the presence of the cocaine and drug paraphernalia in his car. Although defendant testified that he knew that clothing, blankets, a basket, and a television found in the car belonged to Dubois, he claimed that he did not know that the cocaine or scales were in the car, that he did not know who the cocaine belonged to, and that he "couldn't say" the cocaine belonged to Dubois. He did not provide any explanation for the crack pipes or the ammunition. Moreover, although defendant claimed that the money was related to his construction work—he was paid in cash and paid his workers in cash—defendant relied solely on his own testimony and did not present evidence from any customer or employee to corroborate his assertion.

In addition, once defendant chose to testify, in order to present his defense, he opened the door for the State to use his pre-arrest silence to impeach him. Therefore, the following cross-examination of defendant was properly permitted to impeach defendant's testimony:

Q. And . . . you told—you didn't tell Trooper Davis that you got it from building garages and doing work for people, did you?

A. He didn't ask.

Q. But you did realize that he was seizing your money; is that correct?

A. No.

Q. He took it from you, didn't he?

A. But I didn't know I wasn't going to get it back.

In light of defendant's cross-examination testimony about his pre-arrest silence, defendant cannot show that the admission of Trooper Davis' testimony about defendant's pre-arrest silence tilted the scales against him.

Defendant argues, however, that the admission of Trooper Davis' testimony about defendant's pre-arrest silence forced defendant to later take the stand in his own defense. We disagree. In order to present his theory of the case—that the cocaine actually belonged to someone else—defendant had to take the stand. None of the State's witnesses presented any evidence that the cocaine belonged to Dubois or even that defendant was helping her move her belongings. Trooper Davis merely testified that he was aware that defendant and Dubois were "moving some stuff from one place to another."

Defendant was the only person who suggested to the jury that the cocaine belonged to someone else, such as Dubois. Without defendant's testimony, his counsel would have been unable to argue such a theory in closing argument. *See State v. Williams*, 317 N.C. 474, 481, 346 S.E.2d 405, 410 (1986) (noting counsel may argue facts in evidence and inferences which may be drawn from those facts, but counsel is prohibited from arguing facts not supported by evidence). Accordingly, absent defendant's testimony, no alternate explanation for the cocaine's being in his car could have been offered. *See also Alkano*, 119 N.C. App. at 262, 458 S.E.2d at 262 ("We cannot see how the officers' testimony about defendant's failure to give further explanatory statements made it any more necessary for him to testify than was already necessary to refute the officers' testimony on his inculpatory statements.").

Considering the sum of the evidence pointing to defendant's guilt and his own cross-examination, we believe that there is no reasonable probability that the jury would have returned a different verdict if Trooper Davis' testimony about defendant's failure to provide an explanation for the cocaine or money had not been admitted. Therefore, there was no plain error.

### Testimony about Defendant's Post-Arrest, Pre-*Miranda* Warnings Silence Elicited During State's Case in Chief

Defendant also contends that the trial court erred in allowing the State to question Trooper Davis and Trooper Smith about defendant's silence after Trooper Davis arrested defendant but before Trooper Smith read him his *Miranda* rights:

> Q. Anyway, after Trooper Smith and Trooper Williams get there, while you're waiting on them, did Mr. Mendoza say anything to you or make any statements to you?
>
> [Trooper Davis]. (Negative indication.)
>
> . . . .
>
> Q. While you and Trooper Smith and Trooper Williams were searching Mr. Mendoza's vehicle, did he make any comments to you?
>
> [Trooper Davis]. No, ma'am, after—after I placed him under arrest I don't remember having any conversation with him.
>
> . . . .
>
> Q. When you first got there and he was there out on the scene and you all were searching and you were taking custody of the cocaine, did he ever make any statements about: That's not mine; I don't know how that got there?
>
> [Trooper Smith]. No, ma'am.

Like defendant's pre-arrest silence, defendant's post-arrest, pre-*Miranda* warnings silence could only be used for the purpose of impeachment and not, as occurred here, in the State's case in chief. *Boston*, 191 N.C. App. at 648, 663 S.E.2d at 894. Further, we cannot see how this silence—coming well before any spontaneous utterance by defendant—falls within the scope of *Alkano*. We, therefore, hold that this admission was error. For the same reasons set forth above, however, admission of the testimony did not rise to the level of plain error.

### Testimony about Defendant's Pre-Arrest Silence Elicited During State's Rebuttal

Defendant next challenges testimony elicited from Trooper Davis by the State during its rebuttal case:

Q. . . . When you took the bag, the plastic bag that had the money in it from the Defendant, I believe you testified that you did not know what was in the bag initially, as he was trying to conceal it from you. Did he say anything to you about what was in the bag as you took it and you began to open up the bag—

A. No, ma'am.

Q. —to see what was inside?

A. He didn't make any comment to me about it.

Q. After you saw that it was a large amount of money, did Mr. Mendoza ever make any comments to you?

A. No, he didn't.

Q. Did he make any comments about where the money had come from?

A. No, ma'am.

It is unclear whether this testimony would be permitted by *Boston* and *Jenkins*. The State does not cite any authority that suggests referring to a defendant's silence in rebuttal necessarily constitutes using it for impeachment rather than as substantive evidence in the absence of a limiting instruction. Nor does defendant cite any authority for his contention that admission of such testimony does not constitute proper impeachment.

We need not, however, resolve that issue given the evidence described above and defendant's cross-examination. We hold that even if the admission of this testimony did not amount to impeachment, any prejudice did not rise to the level of plain error.

### Testimony about Defendant's Post-Arrest, Post-*Miranda* Warnings Silence Elicited During State's Case in Chief and State's Cross-Examination of Defendant

Finally, defendant argues that the trial court erred in permitting the State to question Trooper Smith and defendant about defendant's post-arrest, post-*Miranda* warnings silence. Specifically, defendant challenges the following exchange that occurred during the State's direct examination of Trooper Smith:

Q. When you had Mr. Mendoza in your vehicle, either after you had read him his rights or as you brought him down to the detention center for processing, did he ever make any voluntary statements to you?

A. No, ma'am, just that he—he was in big trouble and that he needed a lawyer before any questioning.

Q. I'm sorry, so you said that he was in big trouble? Did you say that to him or did he say that to you?

A. He said that himself. Mr. Mendoza said that he was in big trouble and that he needed a lawyer before questioning.

Defendant also challenges the State's extensive questioning of defendant during cross-examination about (1) his failure to attempt to get his money back by contacting the DEA, explaining that he earned the money legitimately, and offering a list of names of people for whom he had worked; (2) his failure to tell the troopers about the source of the money; and (3) his failure to tell anyone, before trial, Christie Dubois' name or the name of her boyfriend.

Defendant does not specifically challenge the reference to his statement that he was "in big trouble," but we agree that the admission of the other challenged testimony concerning defendant's post-arrest, post-*Miranda* warnings silence, including defendant's invoking his right to refuse to answer questions until he had a lawyer,[2] violated *Doyle*. The United States Supreme Court held in *Doyle*, 426 U.S. at 618, 49 L. Ed. 2d at 98, 96 S. Ct. at 2245, that when a person under arrest has been advised of his *Miranda* rights, which include the right to remain silent, there is an implicit promise that the silence will not be used against that person. It is, therefore, a violation of a defendant's rights under the Fourteenth Amendment to the United States Constitution to subsequently impeach the defendant on cross-examination by questioning him about the silence. *Id.* at 619, 49 L. Ed. 2d at 98, 96 S. Ct. at 2245. *See also State v. Hoyle*, 325 N.C. 232, 235-37, 382 S.E.2d 752, 753-54 (1989) (applying *Doyle* and holding State's questioning detectives and defendant about defendant's post-arrest, post-*Miranda* warnings silence violated right to remain silent); *State v. Shores*, 155 N.C. App. 342, 351, 573 S.E.2d 237, 242 (2002) (same), *disc. review denied*, 356 N.C. 690, 578 S.E.2d 592 (2003). Thus,

---

2. *See State v. Dix*, 194 N.C. App. 151, 155, 669 S.E.2d 25, 28 (2008) ("It is well settled that, during custodial interrogation, once a suspect invokes his right to counsel, all questioning must cease until an attorney is present or the suspect initiates further communication with the police."), *appeal dismissed and disc. review denied*, 363 N.C. 376, 679 S.E.2d 140 (2009). Defendant does not separately argue that the trial court erred in allowing testimony that he invoked his right to counsel. *See State v. Ladd*, 308 N.C. 272, 283-84, 302 S.E.2d 164, 172 (1983) ("[A] defendant *must* be permitted to invoke this right [to council] with the assurance that he will not later suffer adverse consequences for having done so.").

pursuant to *Doyle*, we hold that the State's questioning of Trooper Smith and defendant about defendant's post-arrest, post-*Miranda* warnings silence was error.

*Alkano* does not hold otherwise. Even though *Alkano* addressed post-arrest silence, the silence used in that case was pre-*Miranda* warnings silence and not, as is the case here, post-*Miranda* warnings silence. *Alkano*, therefore, does not apply. Moreover, here, the evidence shows that defendant made only one comment after his arrest about being in trouble and needing a lawyer. In *Alkano*, the defendant "spoke freely while in custody," 119 N.C. App. at 260, 458 S.E.2d at 261, making various inculpatory statements, but then at trial sought to provide a differing explanation for the events. Defendant's *single* comment that he was "in big trouble" at the same time he invoked his constitutional right to counsel and to remain silent did not open the door to the State's suggesting that, despite having invoked his right to remain silent, defendant should have spoken further regarding the explanations he provided at trial. Nonetheless, even though the admission of the post-arrest, post-*Miranda* warnings silence was error, for the reasons already given, we do not believe that this error amounted to plain error.

No error.

Chief Judge MARTIN and Judge ELMORE concur.