BRYANT, Judge.
 

 *294
 
 Testimony that the investigating detective was unable to reach defendant to question him during her investigation was admissible to describe the course of her investigation, and was not improper testimony of defendant's pre-arrest silence.
 

 A fuller factual background can be found in
 
 State v. Taylor,
 
 ---N.C.App. ----,
 
 767 S.E.2d 585
 
 (2015),
 
 rev'd,
 

 368 N.C. 300
 
 ,
 
 776 S.E.2d 680
 
 (2015). On remand from the Supreme Court to address an issue raised by defendant but not previously addressed by this Court regarding defendant's pre-arrest silence, we include only those facts necessary to a resolution of that issue.
 

 In October 2010, Bo Anderson Taylor ("defendant") and his girlfriend Gail Lacroix moved in with defendant's sister Crystal Medina ("Medina"). Medina said defendant could stay in the shop in her backyard. Medina's backyard had locked green and white trailers which contained lasers, generators, and other tools.
 

 In November 2010, Medina found a pawn ticket in her truck which indicated that defendant had pawned one of her lasers. Medina confronted defendant, showed him the pawn ticket, and asked if defendant had taken anything else from her. Defendant denied knowledge of the ticket and refused to respond to her questions.
 

 Following this confrontation, Medina left her home to take her daughter to a doctor's appointment. Upon her return, she found that defendant and Lacroix had moved out. Medina entered the building where defendant and Lacroix had been staying and discovered another pawn ticket.
 

 Medina contacted the New Hanover County Sheriff's Office and reported that defendant had stolen several items from the trailers in her backyard. The case was assigned to Detective Angie Tindall, who conducted an investigation and confirmed that the items had been pawned by defendant. The pawn tickets and video from the pawn shops confirmed that defendant had pawned a Bosch drill, a portable air compressor, two generators, and two lasers, in exchange for a total amount of $585.00 in loans from various pawn
 
 *224
 
 shops. Defendant had signed the pawn tickets associated with each of the items indicating that he was
 
 *295
 
 the owner of the items. Detective Tindall attempted several times to contact defendant, but was unsuccessful in doing so.
 

 Defendant was arrested, tried, and convicted by a jury of misdemeanor larceny, breaking and entering, and five counts of obtaining property by false pretenses. The court consolidated the offenses into three judgments, imposing consecutive active terms of 8 to 10 months, 11 to 14 months, and 11 to 14 months.
 

 _________________________
 

 On remand, we address defendant's argument that the trial court allowed the State to introduce extensive and repetitive testimony in its case-in-chief that defendant exercised his pre-arrest right to silence, and that because such testimony was not for the purpose of impeachment, the trial court committed plain error. We disagree.
 

 Specifically, defendant asserts that when the trial court allowed testimony from Detective Tindall related to defendant's silence in the face of her investigative inquiries, he was deprived of any benefit of his right to silence. Defendant did not object to Detective Tindall's testimony at trial; therefore, the appropriate standard of review is plain error.
 
 State v. Collins,
 

 334 N.C. 54
 
 , 62,
 
 431 S.E.2d 188
 
 , 193 (1993).
 

 "Whether the State may use a defendant's silence at trial depends on the circumstances of the defendant's silence and the purpose for which the State intends to use such silence."
 
 State v. Mendoza,
 

 206 N.C.App. 391
 
 , 395,
 
 698 S.E.2d 170
 
 , 173 (2010) (quoting
 
 State v. Boston,
 

 191 N.C.App. 637
 
 , 648,
 
 663 S.E.2d 886
 
 , 894 (2008) ). "[A] defendant's pre-arrest silence and post-arrest, pre-
 
 Miranda
 
 warnings silence may not be used as substantive evidence of guilt, but may be used by the State to impeach the defendant by suggesting that the defendant's prior silence is inconsistent with his present statements at trial."
 
 Id.
 
 at 395,
 
 698 S.E.2d at
 
 174 (citing
 
 Boston,
 

 191 N.C.App. at
 
 649 n. 2,
 
 663 S.E.2d at
 
 894 n. 2 ).
 

 Here, during her testimony on direct examination by the State, Detective Tindall discussed her lack of questioning or inability to question defendant during the course of her investigation:
 

 THE STATE: And did you try to get in touch with the defendant?
 

 TINDALL: Yes, I did.
 

 THE STATE: How?
 

 TINDALL: Telephone.
 

 *296
 
 THE STATE: Did you call him?
 

 TINDALL: I would call a family member and he was not there, called another family member, he's not there, and another family member, here's [sic] not there.
 

 THE STATE: Did the defendant ever make contact with you?
 

 TINDALL: No.
 

 THE STATE: Did the defendant ever speak to you?
 

 TINDALL: No.
 

 THE STATE: Did the defendant ever turn over any pawn slips to you?
 

 TINDALL: No.
 

 THE STATE: Did the defendant ever assist you in locating any of the property?
 

 TINDALL: No.
 

 THE STATE: In fact, how did you locate the pawn slips [Medina] gave you?
 

 TINDALL: The Sheriff's Office has a system called Pawn Watch in which we enter items into the Pawn Watch or through PTP, which is Police to Police, we put in names or serial numbers for a match in the system. Pawn shops are required to report all items pawned or sold.
 

 THE STATE: So you had to search those items out?
 

 TINDALL: Yes.
 

 THE STATE: And that information you have is based on the serial numbers that [Medina] provided you?
 

 TINDALL: Uh-huh.
 

 THE STATE: At any point did you ever question this case, this has a lot of family drama?
 

 TINDALL: Yes.
 

 THE STATE: What made you go forward?
 

 *225
 
 TINDALL: [Medina] seemed to be telling me the truth, she
 
 *297
 
 gave me all the information possible that she had and we are required to investigate everything to the fullest.
 

 THE STATE: In fact, did you even go investigate [Medina]?
 

 TINDALL: Yes.
 

 THE STATE: How did you do that and why?
 

 TINDALL: A family member advised me that [defendant] was asked to pawn the items for [Medina], that [Medina] had stolen [f]ive [h]undred [d]ollars from her employer. I investigated that and learned that there was no evidence of this occurring, so, therefore, [Medina] was never charged and I had no evidence.
 

 ...
 

 THE STATE: You stated that you had tried to speak to the defendant?
 

 TINDALL: Yes.
 

 THE STATE: Did you leave a number for the defendant?
 

 TINDALL: Yes.
 

 THE STATE: Did you leave messages for the defendant?
 

 TINDALL: Through family members, yes.
 

 THE STATE: And did he ever call you back?
 

 TINDALL: No.
 

 THE STATE: Has he ever given you any information?
 

 TINDALL: No.
 

 Defendant cites to a number of cases which we acknowledge discuss the issue of pre-arrest silence.
 
 See
 

 State v. Moore,
 

 366 N.C. 100
 
 , 104,
 
 726 S.E.2d 168
 
 , 172 (2012) (noting defendant's right to silence would be "destroyed" if he could be penalized for relying on it);
 
 Mendoza,
 

 206 N.C.App. at 396-98
 
 ,
 
 698 S.E.2d at 174-76
 
 (finding error where a state trooper made two comments at different points in his testimony regarding a defendant's pre-arrest silence);
 
 Boston,
 

 191 N.C.App. at 651
 
 ,
 
 663 S.E.2d at 896
 
 (holding the prosecution may not comment on a defendant's pre-arrest silence or use it is as substantive evidence of his guilt).
 

 However, none of these cases recognize the principle of pre-arrest silence where there has been no direct contact between the defendant
 
 *298
 
 and a law enforcement officer. Pre-arrest silence has no significance if there is no indication that a defendant was questioned by a law enforcement officer and refused to answer. Here, the evidence showed this was an investigation into a family matter where at least one family member told the investigator the sister who reported the crime against defendant had in fact asked defendant to pawn the items the sister reported as stolen. Throughout the investigation of this "family drama," Detective Tindall talked with several family members and tried a number of times to reach defendant through other family members but defendant did not respond. The testimony at issue revealed that Detective Tindall was not able to make contact with defendant at all, much less confront him in person and request that he submit to questioning. Additionally, there was no indication in Detective Tindall's direct testimony that defendant knew she was trying to talk to him and that he refused to speak to her.
 
 [1]
 
 Thus, it cannot be inferred that defendant's lack of response to indirect attempts to speak to him about an ongoing investigation was evidence of pre-arrest silence.
 

 Based on the record in this case, we hold that the testimony at issue here was admitted to show Detective Tindall's multiple attempts to make contact with defendant during the course of her investigation of this family dispute. Nothing in Detective Tindall's testimony shows pre-arrest silence by defendant in response to police questioning. Therefore, the trial court did not err in admitting this testimony. Accordingly, defendant's plain error argument is overruled.
 

 NO PLAIN ERROR.
 

 Judges ELMORE and HUNTER, JR., concur.
 

 [1]
 

 Defendant, in his testimony, said he was aware that Detective Tindall tried to speak to him, but did not indicate at what point in time he became aware. Defendant said he came forward and turned himself in to another detective.