IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-967

Filed: 7 April 2020

Haywood County, No. 18 CRS 315-16

STATE OF NORTH CAROLINA

v.

SHANNA CHEYENNE SHULER

Appeal by defendant from judgment entered 31 October 2018 by Judge William H. Coward in Haywood County Superior Court. Heard in the Court of Appeals 17 March 2020.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Brent D. Kiziah, for the State.*
>
> *W. Michael Spivey for defendant-appellant.*

TYSON, Judge.

Shanna Cheyenne Shuler ("Defendant") appeals from judgment entered upon the jury's verdicts finding her guilty of trafficking in methamphetamine and simple possession of marijuana. We find no error.

I. Background

A. State's Evidence

Maggie Valley Chief of Police Russell Gilliland and Detective Brennan Regner responded to a disturbance call at a motel involving the occupants of a silver Ford

Fusion automobile on 2 March 2017. Detective Regner observed the vehicle at a nearby residence, with a man standing outside the vehicle. Both officers approached the man, who identified himself as Joshua Warren and presented a South Carolina driver's license. The officers determined outstanding warrants were pending for Warren's arrest. Warren was arrested, searched, and taken from the scene. The officers found $1,700.00 in cash on Warren when he was searched.

The officers approached Defendant, who had been sitting in the vehicle, and asked her for identification. Defendant produced a valid identification card. The officers learned an arrest warrant was also pending for Defendant. Chief Gilliland informed Defendant of the arrest warrant and asked if she had any contraband on her. Defendant appeared hesitant, then removed a clear bag containing a leafy substance from inside of her bra. Chief Gilliland specifically referenced methamphetamine and asked Defendant again if she had anything else on her person.

Detective Regner explained to Defendant that she could face additional charges if she arrived at the detention facility with other contraband on her. Defendant produced another clear bag, also from inside of her bra, containing a crystal-like substance. The officers seized the evidence and the vehicle, and took Defendant into custody.

The next day, officers searched the vehicle. A digital scale, rolling papers, and a clutch bag with Defendant's name on it were found in the center console. Defendant was charged with felony trafficking in methamphetamine and with misdemeanor possession of marijuana. Prior to trial, Defendant timely filed her notice of intent to offer the defense of duress pursuant to N.C. Gen. Stat. § 15A-905(c)(1).

Detective Regner testified for the State. The State asked her if Defendant had made "any statements about Joshua Warren when she took those substances out of her bra?" Defendant's counsel objected, citing the right to counsel under the Fifth Amendment to the Constitution of the United States. The trial court overruled the objection. Detective Regner answered: "No, ma'am. She made no -- no comment during that one time."

Defendant's counsel moved for the court to excuse the jury. Outside the presence of the jury, Defendant's counsel moved for a mistrial over the State's question, which had "solicited an answer highlighting [Defendant's] silence at the scene." The trial court acknowledged Defendant's prior objection and conducted a *voir dire* of Detective Regner's testimony to address whether Defendant was under arrest at the time of her alleged silence.

Detective Regner testified during the *voir dire* that Defendant was not in custody when she was approached and asked if she possessed any illegal substances on her. On cross-examination during the *voir dire*, Detective Regner testified she and

Chief Gilliland approached Defendant once they had learned of her pending arrest warrant and asked her: "You're under arrest, do you have anything on you?"

The trial court allowed the State to re-ask the question when the jury returned over Defendant's objection.

## B. Defendant's Testimony

Defendant testified in her own defense. She admitted she was addicted to methamphetamine. Defendant had known Warren's family. Warren had befriended her on social media on 28 February 2019. She testified Warren asked her if she wanted to accompany him as he rented a car on 2 March 2019. Defendant explained Warren was "known to police" and "just wanted to be in a different car so he could go and do whatever." She testified she agreed to go with Warren because she had been using methamphetamine, had been awake for eight days, and was bored.

Defendant testified Warren drove to a motel in Maggie Valley to meet the person who would rent him another car. She testified the motel owner "had some words" and was cursing with Warren when he stepped out of the car there. Warren and Defendant left the motel. Defendant testified Warren then saw a truck with the people he had intended to meet. Warren told them to meet him at a store across the street from the motel.

Warren drove to the store and met with the people in the truck. Defendant testified she saw Warren pull "a small baggie" out of his pants and hand it into the

passenger side window of the truck. She then saw someone from the truck hand money to Warren. She was sitting in the passenger seat of Warren's car at the store when they first saw the police arrive at the motel.

She testified Warren drove away from the store. Warren pulled the car into the driveway of a house she did not know and exited the car. She presumed Warren went to knock on the door of the house, while she remained in the passenger seat. She testified Warren was returning to the car when the police officers arrived. The officers spoke with Warren and left.

After the officers left, Warren told her he thought he had an active warrant for his arrest "for tying my girlfriend to a tree." She testified Warren then saw the officers returning and cursed. He pulled a bag out of his pants and tossed it into Defendant's lap. She testified Warren stated, "if you don't hide it then you'll be the next one chained to a tree."

Defendant testified she took Warren's threat seriously and put the bag he had given to her into her bra. Defendant did not testify concerning her silence about Warren's threat in response to the officers' questions to her.

Defendant also called Warren as a witness in her defense. Warren plead his Fifth Amendment rights rather than answering most questions Defendant's counsel asked. Warren denied he had ever tied his girlfriend to a tree or had threatened Defendant.

The trial court instructed the jury on the defense of duress. The jury's verdict found Defendant guilty of both charges. The trial court consolidated the charges and sentenced Defendant to an active term of 70 to 93 months in prison and ordered $57,533.00 in fees, fines, and costs entered as a civil judgment. Defendant entered notice of appeal in open court.

## II. Jurisdiction

An appeal as of right lies with this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2019).

## III. Issue

Defendant argues the trial court erred by admitting into evidence testimony of her silence in response to questions by the police officers. She asserts this admission violates her privilege against self-incrimination under the Fifth and Fourteenth Amendments to the Constitution of the United States.

## IV. Standard of Review

"The standard of review for alleged violations of constitutional rights is *de novo*." *State v. Veney*, 259 N.C. App. 915, 917, 817 S.E.2d 114, 116 (citation omitted), *disc. review denied*, 371 N.C. 787, 821 S.E.2d 169 (2018). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (citation and internal quotation marks omitted).

V. <u>Analysis</u>

Defendant argues the trial court erred in allowing the State to elicit evidence of her silence, specifically her failure to implicate Warren, after he had been removed from the scene, when asked by police if she had any contraband on her.

> [A] criminal defendant has a right to remain silent under the Fifth Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment, and under Article I, Section 23 of the North Carolina Constitution. A defendant's decision to remain silent following [her] arrest may not be used to infer [her] guilt, and any comment by the prosecutor on the defendant's exercise of [her] right to silence is unconstitutional.

*State v. Ward*, 354 N.C. 231, 266, 555 S.E.2d 251, 273 (2001) (citations omitted).

This Court has held "a defendant's pre-arrest silence and post-arrest, pre-*Miranda* warnings silence may not be used as substantive evidence of guilt, but may be used by the State to impeach the defendant by suggesting the defendant's prior silence is inconsistent with [her] present statements at trial." *State v. Booker*, __ N.C. App. __, __, 821 S.E.2d 877, 885 (2018) (citation omitted). "Whether the State may use a defendant's silence at trial depends on the circumstances of the defendant's silence and the purpose for which the State intends to use such silence." *State v. Boston*, 191 N.C. App. 637, 648, 663 S.E.2d 886, 894, *disc. review denied*, 362 N.C. 683, 670 S.E.2d 566 (2008).

A. Silence of Duress

Defendant argues the State elicited her silence during its case in chief, by anticipating and preemptively attacking her defense of duress. Defendant argues this testimony was impermissibly admitted as substantive evidence, rather than permissible impeachment evidence, because she had not yet testified.

The "main purpose of impeachment is to discount the credibility of a witness for the purpose of inducing the jury to give less weight to [her] testimony." *State v. Mendoza*, 206 N.C. App. 391, 397, 698 S.E.2d 170, 175 (2010) (citation omitted). This Court has held the State may not preemptively "point[] out to the jury that [a] defendant chose to remain silent when in [a police officer's] presence rather than provide the explanation proffered at trial." *Id.* at 398, 698 S.E.2d at 176.

In *Mendoza*, the State elicited testimony that the defendant did not act surprised when the arresting officer found cocaine in his car, nor did he offer any explanation as he was being arrested. *Id.* at 396-97, 698 S.E.2d at 174-75. This Court held admission of that testimony as substantive evidence was error. *Id.* at 397, 698 S.E.2d at 175. Further, in *Mendoza*, this Court considered and rejected the State's argument that it may preemptively impeach the defendant before he testified. *Id.*

### B. Affirmative Defense

Unlike in *Mendoza*, Defendant in this case filed written notice of her intent to present an affirmative defense of duress. To invoke the affirmative defense of duress, the burden is on Defendant to show her "actions were caused by a reasonable fear

that [s]he would suffer immediate death or serious bodily injury if [s]he did not so act." *State v. Cheek*, 351 N.C. 48, 62, 520 S.E.2d 545, 553 (1999) (citation omitted), *cert. denied*, 530 U.S. 1245, 147 L. Ed. 2d 965 (2000).

The State argues Defendant's intended invocation of the affirmative defense of duress distinguishes this case from *Mendoza* and aligns this case with other cases allowing impeachment by silence. When the State seeks to impeach a defendant through silence, "[t]he test is whether, under the circumstances at the time of arrest, it would have been natural for defendant to have asserted the same defense asserted at trial." *State v. McGinnis*, 70 N.C. App. 421, 424, 320 S.E.2d 297, 300 (1984) (citing *State v. Lane*, 301 N.C. 382, 271 S.E.2d 273 (1980)).

In *McGinnis*, this Court found no error in the admission of the defendant's post-arrest pre-*Miranda* warnings silence, concluding: "it would clearly have been natural for [the] defendant to have told the arresting police officer that the shooting with which [he] was accused was accidental, if [he] believed that to be the case." *Id.* Here, it would have been similarly "natural for" Defendant to have told the arresting officers the contraband she possessed belonged to Warren and he had threatened her to conceal it, if she "believed that to be the case." *Id.*

Warren had been arrested and removed from the scene before the officers asked Defendant if she possessed any contraband on her. The threat Warren

assertedly posed to Defendant was greatly mitigated, if not completely eliminated, by his arrest and removal.

The only difference between this case and *McGinnis* is that the State elicited evidence of Defendant's silence asserting Warren's threat in its case in chief. Defendant had appropriately notified the State of her intended defense, pursuant to N.C. Gen. Stat. § 15A-905(c)(1) (2019). The trial court had informed the prospective jurors of Defendant's affirmative defense of duress prior to the jury being empaneled.

Because the affirmative defense of duress was asserted before Defendant testified, the exclusion of Detective Regner's answer is not governed by *Mendoza*. We find no error in the admission of Detective Regner's testimony of Defendant's silence to challenge her affirmative defense of duress from Warren's threats and her asserted possession of contraband under duress, after his arrest and removal.

## VI. Conclusion

The trial court properly overruled Defendant's objection and admitted Detective Regner's testimony of Defendant's silence of Warren's alleged threat. Defendant received a fair trial, free from prejudicial errors she preserved and argued.

We find no error in the jury's verdicts or in the judgment entered thereon. *It is so ordered.*

NO ERROR.

Judges BRYANT and ARROWOOD concur.