IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-779

Filed 20 August 2025

Jackson County, Nos. 20CRS051380, 21CRS000174, 21CRS000190, 21CRS050214

STATE OF NORTH CAROLINA

v.

KENNETH WILLIAM MCCALL, Defendant.

Appeal by Defendant from judgment entered 17 November 2022 by Judge Bradley B. Letts in Jackson County Superior Court. Heard in the Court of Appeals 11 June 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Benjamin T. Spangler, for the State.*

*Jarvis John Edgerton, IV, for Defendant.*

GRIFFIN, Judge.

Defendant Kenneth William McCall appeals from the trial court's judgment entered after a jury convicted him of one count of attempted murder and two counts of discharging a firearm into an occupied vehicle causing serious injury. Defendant contends the trial court plainly erred by allowing the State to question a witness about Defendant's pre-arrest silence. We hold the trial court did not err.

## I.  Factual and Procedural Background

This case arises from a shooting in western North Carolina between Defendant

and his second-cousin, William McCall. Evidence presented at trial tended to show the following:

William lived in Pinhook, North Carolina, where he helped maintain Pinhook Campground and RV Park. On 23 October 2020, while driving past the campground, William noticed pigs on the property. He subsequently shot and killed one of the pigs because of previous issues with the pigs destroying the campground property. William then put his rifle in the bed of his truck and started leaving the campground.

As he was leaving, he noticed Defendant's vehicle "pretty much blocking the road" while Defendant and Defendant's partner, Lynn, were standing outside of the vehicle. Defendant approached William and chastised him for killing the pig. William, while sitting in the driver's seat of his truck, heard two gunshots and realized he had been shot in his arm and chest. William then fled the campground and drove to his stepfather's house a short distance away. His stepfather drove him to the nearby McCall's grocery where they called for emergency assistance. Emergency personnel transported William to the hospital where he was placed into a medically induced coma.

After the shooting, Defendant traveled approximately forty minutes to his brother's house, because he "figured [he] would have to make bond." Defendant talked to his brother, Curtis McCall, and nephew, Jonathan McCall, at his brother's house, but he did not speak much about the shooting. Officers with the Transylvania County Sheriff's Department then arrived at Curtis's house and arrested Defendant.

Investigating officer Detective Sergeant Brandon Elders, who is trained in trajectory analysis, determined the bullet went through William's arm prior to entering his chest through the "back side around the triceps area." After reviewing body-camera footage, Detective Elders also concluded William's "left arm would have been somewhere on the steering wheel."

On 21 March 2021, Defendant was indicted by a Jackson County grand jury on one count of intimidating a witness, one count of attempted murder, and two counts of discharging a firearm into an occupied vehicle causing serious injury. Defendant's matter came on for trial in Jackson County Superior Court on 7 November 2022.

At trial, Defendant claimed he shot William in self-defense after William pointed a rifle at him. The State elicited testimony from Jonathan McCall that Defendant did not mention William aiming his rifle at Defendant prior to the shooting:

> Q: Okay. At any time that you're talking with [Defendant] with your father there and/or Chester there, did [Defendant] state that [William] had pointed a gun at him and that's why he shot him?
>
> A: I don't' -- I don't remember that if he said it.
>
> Q: You don't think he said that or you don't remember - -
>
> A: I don't remember that being said.
>
> Q: Okay. Do you feel like if that had been something that had been told to you, that you would remember him saying that?
>
> A: I guess. I guess I would, yes. Because, I mean, like I

said, we was all nervous, and [Defendant] was a nervous wreck, and he wouldn't give - - I don't know what him and - - what him and my dad had discussed before I got there, but like I said, all I knew was that a pig had been shot and that [William] had been shot and that he had shot him twice.

Q: Okay. But at least while you're there, you don't recall [Defendant] saying, "I shot him in self-defense," or, "I shot him because he pointed a gun at me"?

A: I do not remember that, no.

Defendant later testified at trial. He stated he shot William after William drove up to him and pointed a rifle at him. After hearing all the evidence, the jury found Defendant guilty of one count of attempted murder and two counts of discharging a firearm into an occupied vehicle causing serious injury. The jury did not find Defendant guilty of intimidating a witness.

Defendant filed a petition for writ of certiorari, which we granted by order on 12 September 2023.

## II. Analysis

Defendant contends the trial court plainly erred by allowing evidence of his pre-arrest silence regarding self-defense in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Specifically, Defendant argues the State should not have been allowed to elicit testimony from Defendant's nephew, Jonathan, about Defendant's failure to mention William aiming a rifle at him in the immediate aftermath of the shooting. Defendant characterizes this testimony as

impeachment evidence improperly tendered to the jury before Defendant testified on his own behalf.

In seeking to persuade us that the admission of the challenged portion of Jonathan's testimony constituted plain error, Defendant begins by arguing that an error occurred when the "impeachment evidence" was tendered to the jury before Defendant testified. Defendant relies on *State v. Mendoza,* 206 N.C. App. 391, 698 S.E.2d 170 (2010) and *State v. Boston,* 191 N.C. App. 637, 663 S.E.2d 886 (2008) in support of this argument. In Defendant's view, it was error for the trial court to allow the "impeachment evidence" prior to Defendant testifying. We disagree.

"An issue that was neither preserved by an objection lodged at trial nor deemed to have been preserved by rule or law despite the absemce of such an objection can be made the basis of an issue on appeal if the judicial action in question is argued to amount to plain error." *State v. Caballero*, 383 N.C. 464, 473, 880 S.E.2d 661, 667–68 (2022) (citing N.C. R. App. P. 10(a)(4)). Since Defendant did not object to the admission of the challenged portion of Jonathan's testimony at trial, we only review for plain error. *Id.*

Plain error is error that "seriously affects the fairness, integrity, or public reputation of judicial proceedings" and is to be "applied cautiously and only in the exceptional case." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation modified). "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial," *State v. Lawrence*, 365 N.C.

506, 518, 723 S.E.2d 326, 334 (2012) (citing *Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (2000), and must show "prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty," *Id.* (cleaned up). "[T]he analysis is whether, without [the contested] evidence, the jury probably would have reached a *different* result." *State v. Reber*, 386 N.C. 153, 160, 900 S.E.2d 781, 788 (2024).

The United States Constitution guarantees that all people are protected from being "compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. North Carolina courts have "'consistently held that the State may not introduce evidence that a defendant exercised his Fifth Amendment right to remain silent.'" *State v. Moore*, 366 N.C. 100, 104, 726 S.E.2d 168, 172 (2012) (quoting *State v. Ladd*, 308 N.C. 272, 283, 302 S.E.2d 164, 171 (1983)). However, such protection is generally only afforded against government actors—not civilians. *See Miranda. v. Arizona*, 384 U.S. 436, 461 (1966) (holding "the privilege appl[ies] to informal compulsion exertion by law-enforcement officers during in-custody questioning").

North Carolina courts have not directly addressed whether a prosecutor's use of a defendant's pre-arrest silence unrelated to law enforcement implicates the Fifth Amendment, but the United States Supreme Court has determined that it does not violate a defendant's Fifth Amendment rights when a prosecutor uses the defendant's non-custodial silence in its case in chief absent invocation of those rights. *See Salinas v. Texas,* 570 U.S. 178, 186 (2013) (holding "the prosecution's use of the defendant's

noncustodial silence did not violate the Fifth Amendment" where there was no evidence that the defendant's failure to assert the privilege was involuntary). Moreover, "even if a defendant's pre-arrest silence is protected by the Fifth Amendment, impeachment by use of silence does not violate the Fifth Amendment where the defendant testifies at trial." *Boston*, 191 N.C. App. at 649, 663 S.E.2d at 894 (citing *Jenkins v. Anderson*, 447 U.S. 231, 238 (1980)).

"The main purpose of impeachment [evidence] is to discount the credibility of a witness for the purpose of inducing the jury to give less weight to his testimony." *Mendoza*, 206 N.C. App. at 397, 698 S.E.2d at 175 (citation modified). "'Impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial.'" *State v. Abbitt*, 73 N.C. App. 679, 682, 327 S.E.2d 590, 592 (1985) (quoting *Jenkins*, 447 U.S. at 238). Pre-arrest silence, however, has "no significance if there is no indication that a defendant was questioned by a law enforcement officer and refused to answer." *State v. Taylor*, 244 N.C. App. 293, 298, 780 S.E.2d 222, 225 (2015).

In *State v. Boston*, we held the trial court erred by allowing testimony about the defendant's refusal to speak with law enforcement prior to her arrest. 191 N.C. App. at 652, 663 S.E.2d at 896. There, the defendant challenged testimony about her refusal to speak with law enforcement after the crime but before arrest. *Id.* at 646–47, 663 S.E.2d at 893. After surveying extra-jurisdictional precedent, we determined the defendant's refusal to attend an interview with law enforcement amounted to an

invocation of the Fifth Amendment, and therefore the State could not use it as substantive evidence of her guilt. *Id.* at 648–52, 663 S.E.2d at 896. As such, we held "proper invocation of the privilege against self-incrimination is protected from prosecutorial comment or substantive use, no matter whether such invocation occurs before or after a defendant's arrest." *Id.* at 651, 663 S.E.2d at 896.

In *State v. Mendoza*, we held the trial court erred by admitting a state trooper's testimony of the defendant's pre-arrest silence. 206 N.C. App. at 392, 698 S.E.2d at 172. At trial, the defendant denied that cocaine found in his car after an accident belonged to him, but rather to a passenger; a claim he did not make to law enforcement at the time of the accident. *Id.* at 394, 698 S.E.2d at 173. The state trooper testified the defendant did not provide an explanation for possessing the cocaine prior to his arrest. *Id.* at 396–97, 698 S.E.2d at 174–75. We held this testimony amounted to "commentary on [the] defendant's pre-arrest silence" and was "squarely" within the holding of *Boston*. *Id.* at 397, 698 S.E.2d at 175. As such, we held introduction of the testimony violated the defendant's Fifth Amendment right against self-incrimination. *Id.* at 398, 698 S.E.2d at 176.

In contrast, in *State v. Taylor*, we determined "[p]re-arrest silence has no significance if there is no indication that a defendant was questioned by a law enforcement officer and refused to answer." 244 N.C. App. at 298, 780 S.E.2d at 225. There, a detective testified she was unable to get in touch with the defendant during her investigation of the crime he was on trial for. *Id.* at 295–97, 780 S.E.2d at 224–

25. Distinguishing the facts from those in *Boston* and *Mendoza*, we held the trial court did not err by allowing the testimony. *Id.* at 297–98, 780 S.E.2d at 225.

Here, because of the complete lack of involvement by law enforcement at the time of silence, the facts do not fit within the holdings of *Boston* or *Mendoza*. While Defendant is correct that Jonathan's testimony was allowed prior to Defendant testifying, and therefore could only be used as substantive evidence of Defendant's guilt and not to impeach him, we disagree that the testimony implicated Defendant's right against self-incrimination. *See Mendoza,* 206 N.C. App. at 392, 698 S.E.2d at 172 ("Since defendant had not yet testified at the time the State presented the evidence, we conclude that this testimony could not have been used for impeachment, but was improperly admitted as substantive evidence of defendant's guilt.").

The United States Supreme Court has held that the Fifth Amendment right against self-incrimination "generally is not self-executing" and that a witness who desires its protection "must claim it." *Salinas,* 570 U.S. at 181 (citation and internal marks omitted). Unlike in *State v. Boston*, Defendant here did not invoke his Fifth Amendment right to silence; nor could he have as no government actor was present when the silence at issue occurred. The context of the challenged testimony reinforces this point. The testimony related to whether Defendant stated to a family member, and not a law enforcement officer like in *Mendoza*, that he acted in self-defense. Additionally, that conversation did not implicate whether Defendant was willing to discuss this with law enforcement as the testimony in *Boston* did. Specifically, the

testimony referenced conversation between family members occurring before law enforcement arrived to arrest Defendant, before law enforcement took Defendant into custody, and before law enforcement questioned Defendant. Although similar to *Boston* in that the challenged testimony came from a civilian witness, the conversation here did not touch on law enforcement at all while the conversation there specifically implicated the defendant's willingness to talk with law enforcement.

Accordingly, Defendant's pre-arrest silence in this context has no significance to his Fifth Amendment right against self-incrimination, or implication of that right, because there is no indication that law enforcement played any role whatsoever in Defendant's silence. *See Jenkins*, 447 U.S. at 240 ("In this case, no governmental action induced [the defendant] to remain silent before arrest."). Therefore, consistent with our holdings in *Taylor, Boston,* and *Mendoza*, we hold the State may use evidence of a defendant's pre-arrest silence as substantive evidence of the defendant's guilt if that silence does not implicate a defendant's willingness to speak with law enforcement and that silence occurs without any influence from the government.

Here, even if the trial court erred by allowing Jonathan's testimony, Defendant cannot show prejudice. Defendant has not demonstrated a reasonable probability that had the testimony in question not been admitted, Defendant would have been acquitted. *See Reber*, 386 N.C. at 158, 900 S.E.2d at 786 ("[T]he defendant must show that the error had a 'probable impact' on the outcome, meaning that 'absent the error,

the jury probably would have returned a different verdict.'" (citation omitted)). The State presented overwhelming evidence of Defendant's guilt. The record reflects Defendant failed to render aid or report the shooting to 911 following the incident and fled the scene and county to his brother's house, thirty-to-forty minutes away. Furthermore, Detective Elders testified about his interviews with Curtis McCall, Jonathan McCall, and Chester Chappell, none of whom mentioned anything about William McCall pointing a gun at Defendant or the shooting being in self-defense.

Detective Elders also testified his training in trajectory analysis allowed him to conclude that, at the time the bullet hit William's left arm, the "left arm would have been somewhere on the steering wheel." Moreover, Detective Elders testified that the first time he was made aware Defendant was claiming self-defense was nearly five months after the shooting. Thus, even if the trial court had excluded Jonathan's testimony about the conversations held in the immediate aftermath of the shooting, the jury still heard testimony that Defendant did not claim self-defense until months after the fact. This testimony, in conjunction with Detective Elder's analysis, provides ample basis for the jury to discount Defendant's version of events in which he shot William while William was pointing a rifle at him.

Given the strength of the State's evidence, we cannot hold there was a reasonable probability that had the testimony in question not been admitted, Defendant would have been acquitted. Accordingly, we hold that even if the trial court erred in allowing Jonathan's testimony, it was not prejudicial error.

### III.     Conclusion

For the foregoing reasons, we hold the trial court did not err by allowing the challenged testimony.

NO ERROR.

Judges STADING and FREEMAN concur.